IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| DUSTIN LONNIE MARSHALL, | § § | |
| Plaintiff, | § § | CIVIL ACTION NO. 4:21-CV-384-SDJ-CAN |
| v. | § § | |
| GREGORY WAYNE ABBOTT, ET AL., | § § | |
| Defendants. | § § | |

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE REGARDING
THE LAWYER DEFENDANTS' MOTIONS TO DISMISS [DKT. 67]**

Pending before the Court is Defendants Arthur Skibell, Kari Bohach, Ryan Bauerle, and Bohach Law Group, P.C.'s Rule 12b and Rule 12e Motion to Dismiss [Dkt. 67]. After reviewing the Motion to Dismiss, and all other relevant filings, the Court recommends that the Motion to Dismiss be **GRANTED** on the Rule 12(b) grounds, **DENIED** on the 12(e) grounds, and further recommends Plaintiff's claims against Defendants Arthur Skibell, Kari Bohach, Ryan Bauerle, and Bohach Law Group, P.C., as well as Defendant Kristin Brady, be dismissed, as set forth herein.

**BACKGROUND**

The present suit is the second filed by Plaintiff to be considered by the Eastern District of Texas related to a 2016 child custody dispute that originated in the 401st District Court of Collin County, Texas. On January 19, 2021, *pro se* Plaintiff Dustin Lonnie Marshall ("Plaintiff"), a resident of South Carolina, filed suit in the District Court for South Carolina [Dkt. 1]. On February 19, 2021, Plaintiff filed an amended complaint – which remains the live pleading [Dkts. 13; 15; 16], naming as Defendants Gregory Abbott, Ken Paxton, Collin County 401st District Court, Judge Mark Rusch, Collin County District Clerk Lynne Finley, Former Collin County District Clerk Andrea Thompson, the City of McKinney, Collin County Sheriff's Office,

Texas Department of Public Safety, Daniel Hodge, Asad Rahman, Tristin T. Harper, Stephen C. Strickler, Arthur Skibell ("Skilbell"), Kari Bohach ("Bohach"), Ryan Bauerle ("Bauerle"), Kristin Brady ("Brady"), and Skibell, Bohach & Archer, P.C. (collectively, Skibell, Bohach, Bauerle, Brady, and Skibell, Bohach & Archer P.C., are referred to as the "the Lawyer Defendants") [Dkt. 13 at 1]. On May 19, 2021, Plaintiff's suit was transferred from South Carolina to the Eastern District of Texas [Dkt. 23] and, on May 20, 2021, was assigned to U.S. District Judge Sean D. Jordan and referred to the undersigned for consideration [Dkt. 25]. Relevant herein, Defendant Kristin Brady has not been served.[1]

*Plaintiff's First EDTX Lawsuit*

Approximately two weeks prior to filing the instant suit in the District Court for South Carolina, on December 30, 2020, Plaintiff filed a virtually identical suit here in the Eastern District of Texas. *Marshall v. Carter*, No. 4:20-CV-00993-SDJ-CAN, 2021 WL 2980716, at *1 (E.D. Tex. June 15, 2021), *report and recommendation adopted*, No. 4:20-CV-993-SDJ, 2021 WL 4316620 (E.D. Tex. Sept. 23, 2021) (hereinafter, the "First Lawsuit"). The First Lawsuit also named as defendants the 401st Collin County District Court and the Lawyer Defendants (Arthur Skibell, Kari Leann Bohach, Ryan Bauerle, and Skibell, Bohach & Archer, P.C.), who represented Winter Carter, the mother of the minor child in the child custody suit. *See id*. In the First Lawsuit, just as here, Plaintiff took issue with various orders issued by the Texas state court, asserting "violation[s] of due process under Sections 1911-1914 of the Indian Child Welfare Act of 1978

---

[1] Plaintiff filed returns of service as to Defendants Thompson, Skibell, Rahman, City of McKinney, Collin County Sheriff's Office, Hodge, Abbott, Bohach, Paxton, Finley, Rusch, Bauerle, Skibell, Bohach & Archer, P.C., Strickler, Harper, and Texas Department of Public Safety [Dkts. 73; 74; 75; 76; 77; 78; 79; 80; 81; 82; 83; 84; 85; 86; 87; 88]. No return of service was filed for Defendants Collin County 401st District Court and Kristin Brady. Summons was returned unexecuted as to Defendant Kristin Brady [Dkts. 95; 96]. Plaintiff made no other attempts to serve Defendant Brady and no request for an extension to serve Brady is on file [*See docket generally*].

REPORT AND RECOMMENDATION – Page 2

and the Fourteenth Amendment Due Process Clause." *Id.* The Court summarized the factual allegations in the First Lawsuit as follows:

> Plaintiff argues that his parental rights were unlawfully terminated by the Texas state court. In support of such assertion he details his 2011 suit for custody of his minor son, which culminated in a Rule 11 agreement with Carter "concerning custody, visitation, access, and child support." This "agreement was incorporated into a final decree issued in 2012" and "provided that Carter was the custodial parent and [Plaintiff] was the non-custodial parent." The law firm, and some or all of the lawyers, named by Plaintiff in this suit represented Carter in connection with this custody suit and subsequent interactions between Plaintiff and Carter related to the custody of D.M. Plaintiff alleges that after regularly exercising his visitation rights, in 2013 Carter again sought to modify the custody order and "began withholding video and telephone dates" with D.M. from Plaintiff. Plaintiff details various unsuccessful attempts, from 2013 to 2020, to visit with his minor child which form the basis of his suit.
>
> The record clarifies the precise scope and outcome of the child-custody disputes. In February 2012, Plaintiff and Carter entered into "Agreed Orders in Suit Affecting the Parent-Child Relationship" in the 401st District Court in Collin County, Texas, which governed "the safety and welfare and in the best interest" of D.M., Plaintiff and Winter Carter's minor child. Plaintiff continued to retain certain "independent rights" as to his minor child. The agreed order was signed on April 17, 2012, by Plaintiff, Carter, and the Texas court. In November 2013, the Texas state court modified the prior order as to the domicile of the child and notification procedures for any change in Plaintiff's domicile. All other requested relief was denied, and "[a]ll other terms of the prior order not specially modified" in the second order "shall remain in full force and effect". Thereafter, in July 2016, Carter requested a transfer of the case to the State of Washington, which was granted in August 2016. This further stayed "the proceedings in Collin County, Texas, until a child custody proceeding is commenced in Clark County, Washington."

*Id.* at *2 (internal citations omitted). On September 23, 2021, Plaintiff's claims in the First Lawsuit were dismissed for lack of subject matter jurisdiction after applying the *Rooker–Feldman* doctrine and finding the Indian Child Welfare Act of 1978 ("ICWA") does not provide the Court jurisdiction over Plaintiff's challenge to the state court child custody proceeding. *Id.* at *9-10; *Marshall v. Carter*, No. 4:20-CV-993-SDJ, 2021 WL 4316620, at *2 (E.D. Tex. Sept. 23, 2021).

*Plaintiff's Second EDTX Lawsuit – The Instant Suit*

In the instant suit, Plaintiff once again takes issue with the 2016 child custody proceedings in the 401st District Court in Collin County, Texas, and with various orders issued by the Texas state court that govern, but did not terminate, the parent-child relationship between Plaintiff and his minor child, D.M. [Dkt. 13 at 7-16]. Plaintiff claims he and his son D.M. "are direct descendants of Nisqually Indians," and that Plaintiff resided with the Nisqually Indian Tribe in Olympia, Washington at the time he was "subject [to] two emergency ex parte temporary restraining orders" [Dkt. 13 at 3]. Plaintiff asserts three claims: (1) "writ for habeas relief from Texas state court orders and judgments" under 28 U.S.C. § 2254;[2] (2) violation of "constitutional and federal law rights," including "court process" for alleged lack of notice of child support proceedings, "depriv[ation] of constitutionally adequate notice" under 25 U.S.C. §§ 1911-1914 (ICWA), violation of religious rights of American Indians, discrimination in the pursuit of a federally funded education, deprivation of the "enjoyment of federally protected lands," and deprivation of beneficiary rights to tribal healthcare services, and (3) conspiracy to injure his civil rights in violation of § 1985(3) [Dkt. 13 at 25-36, 45-48].

---

[2] Plaintiff is not in physical custody; he alleges he is "de facto" in custody, "unlawfully held in Texas state custody" by the many orders and judgments issued by the state court in his child custody proceeding. Plaintiff does not state a valid § 2254 habeas claim. This claim should be dismissed. Plaintiff does not plausibly allege he is detained as required to plead a § 2254 claim [Dkt. 67 at 6-7]. Under § 2254, a "person in custody pursuant to a judgment of a State court" may seek a writ of habeas corpus from a federal district court "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). "Consistent with its view that § 2254 requires a deprivation of liberty, the ... Supreme Court has never held that habeas corpus may be invoked to challenge state-court decisions regarding parental rights or child custody." *Thomas ex rel. Thomas v. DiSanto*, No. 5:17-CV-7, 2017 WL 2728205, at *4 (S.D. Ga. June 23, 2017) (quoting *Jenicek ex rel. J.J. v. Sorenson Ranch Sch.*, No. CIV. 14-4422 SRC, 2014 WL 7332039, at *3 (D.N.J. Dec. 16, 2014)), *report and recommendation adopted*, No. 5:17-CV-7, 2017 WL 3084101 (S.D. Ga. July 19, 2017), *aff'd sub nom. Thomas v. Disanto*, 762 F. App'x 770 (11th Cir. 2019). As such, Plaintiff's § 2254 claim should be dismissed. *See Hill v. Carr*, No. 2:19-CV-42, 2020 WL 1974401, at *4 (S.D. Ga. Apr. 24, 2020) (citing *Holm v. Strange*, No. 116CV02036, 2016 WL 7407099, at *2-3 (N.D. Ala. Dec. 22, 2016)) ("To be clear, Hill has not set forth any facts to support his conclusory allegation that his minor child has been 'detained from him.' Accordingly, to the extent Hill seeks relief in this federal action under habeas corpus principles, the Court should DISMISS Hill's Petition for this reason, as well.") (citations omitted), *report and recommendation adopted*, No. CV 2:19-CV-42, 2020 WL 3170884 (S.D. Ga. June 15, 2020).

At their heart, each of Plaintiff's claims both in this suit and in his First Lawsuit allege certain of the Texas state court child custody and child support orders deprived him of due process and notice required by ICWA and functionally terminated his parental rights [Dkt. 13 at 26, 29-30, 32-34, 36, 43, 47-48].

The factual allegations against the Lawyer Defendants in this suit are indistinguishable from those alleged in the First Lawsuit, which the Court summarized as follows:

> Plaintiff sues D.M.'s mother Winter Rene Carter; an unnamed individual who purportedly lives or lived with D.M.'s mother; three attorneys who represented Carter in the child-custody suit (Arthur Skibell, Kari Leann Bohach, and Ryan Bauerle); as well as the law firm these lawyers practice at, Bohach Law Group, P.C. (also referred to as Skibell, Bohach & Archer, P.C. or BLG); and the underlying Texas state court itself, Collin County 401st District Court. Plaintiff asserts the Court has jurisdiction under both federal question and diversity jurisdiction over his claims for "violation of due process under Sections 1911-1914 of the Indian Child Welfare Act of 1978 and the Fourteenth Amendment Due Process Clause."
> . . . .
> The law firm, and some or all of the lawyers, named by Plaintiff in this suit represented Carter in connection with this custody suit and subsequent interactions between Plaintiff and Carter related to the custody of D.M. Plaintiff alleges that after regularly exercising his visitation rights, in 2013 Carter again sought to modify the custody order and "began withholding video and telephone dates" with D.M. from Plaintiff. Plaintiff details various unsuccessful attempts, from 2013 to 2020, to visit with his minor child which form the basis of his suit.

*Marshall v. Carter*, 2021 WL 2980716, at *1-2 (internal citations omitted). Indeed, the live pleading alleges the same general acts taken by the Lawyer Defendants. Kristin Brady, who remains unserved, is the only attorney identified in the instant lawsuit that was not named in the First Lawsuit. However, the factual allegations as to Brady are the same or similar as the actions alleged about the Lawyer Defendants, that they appeared at hearings in the state child custody proceeding, filed documents on behalf of their client, and that they exchanged communications with Plaintiff related to the proceedings in their role as legal counsel [Dkt. 13 at 13, 30-31, 44].

*The Lawyer Defendants' Motion to Dismiss*

On August 4, 2021, Defendants Skibell, Bohach, Bauerle, and Bohach Law Group, P.C.,[3] moved for dismissal of Plaintiff's claims [Dkt. 67]. The Lawyer Defendants urge, under Rule 12(b)(1) and Rule 12(b)(6), that Plaintiff's claims must be dismissed given that this Court has already once found it lacks subject matter jurisdiction over Plaintiff's claims. The Lawyer Defendants further advance that Plaintiff failed to exhaust his § 2254 habeas claim;[4] and that the Lawyer Defendants have attorney immunity from suit [Dkt. 67 at 4-9]. Plaintiff did not file a response to the instant Motion.[5]

As this Court has already once determined with respect to virtually identical claims and allegations against these same defendants in the First Lawsuit, dismissal of Plaintiff's claims for lack of subject matter jurisdiction under *Rooker–Feldman* is appropriate.[6] *See Marshall v. Carter*, 2021 WL 2980716, at *8-9. Alternatively, attorney immunity is dispositive of Plaintiff's claims against the Lawyer Defendants and calls for dismissal with prejudice.

---

[3] Defendant avers the correct Party is Bohach Law Group, P.C., the successor to the named defendant Skibell, Bohach & Archer, P.C. [Dkt. 67 at 1].

[4] The Lawyer Defendants move for dismissal of Plaintiff's § 2254 habeas claim for failure to exhaust [Dkt. 67 at 4]; however, the Court does not reach this argument as Plaintiff is not in custody, *see* n. 2 *infra*, and because limitations bar any § 2254 claim. "A statute of limitations may support dismissal under Rule 12(b)(6) where it is evident from the plaintiff's pleadings that the action is barred and the pleadings fail to raise some basis for tolling or the like." *Jones v. Alcoa, Inc.*, 339 F.3d 359, 366 (5th Cir. 2003); *In re Dynegy, Inc. Sec. Litig.*, 339 F. Supp. 2d 804, 839 (S.D. Tex. 2004) ("the law in this circuit has long been that limitations may support dismissal under Rule 12(b)(6) where it is evident from the pleadings that the action is barred and the pleadings fail to raise a basis for tolling."). Here, the most recent state court order referenced in the live pleading is the Transfer Order, signed on July 27, 2016 [Dkt. 16 at 32-34]. No basis for tolling appears on the face of the live pleading. The statute of limitations for a § 2254 habeas claim is one year. 28 U.S.C. § 2244(d)(1) ("A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court."). Plaintiff "seeks a writ of habeas relief for two Texas state court judgments," specifically the Temporary Order of July 13, 2016, and the Transfer Order of July 27, 2016, discussed supra [Dkt. 13 at 25-26]. Plaintiff had one year, until July 27, 2017, to file any § 2254 motion for habeas relief. If Plaintiff had a viable § 2254 claim, which he does not, it would be time barred. *Bird v. Fletcher*, No. 9:19-CV-00220-RC, 2020 WL 2951891, at *7 (E.D. Tex. May 1, 2020) (internal citations omitted), *report and recommendation adopted*, No. 9:19-CV-00220-RC, 2020 WL 2944430 (E.D. Tex. June 2, 2020).

[5] *See* Eastern District of Texas Local Rule CV-7(d) ("A party's failure to oppose a motion in the manner prescribed herein creates a presumption that the party does not controvert the facts set out by movant and has no evidence to offer in opposition to the motion.").

[6] The Parties do not raise the application of *res judicata* and/or collateral estoppel.

## ANALYSIS

*Federal Rule of Civil Procedure 12(b)(1)*

A Rule 12(b)(1) motion to dismiss allows a party to challenge the exercise of the Court's subject matter jurisdiction. FED. R. CIV. P. 12(b)(1). Whether a federal court has jurisdiction must "be established as a threshold matter" and "is inflexible and without exception." *Webb v. Davis*, 940 F.3d 892, 896 (5th Cir. 2019) (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95 (1998)). A claim implicating "the *Rooker-Feldman* doctrine is properly analyzed under the Rule 12(b)(1) standard of dismissal." *Maxwell v. Frost Bank*, No. 416CV00342ALMCAN, 2016 WL 11200221, at *4 (E.D. Tex. Dec. 23, 2016), *report and recommendation adopted*, No. 4:16-CV-342, 2017 WL 443119 (E.D. Tex. Feb. 2, 2017).

*Rule 12(b)(1) Grounds for Dismissal*

*Rooker–Feldman Doctrine*

The Lawyer Defendants argue once more that the Court lacks jurisdiction over Plaintiff's §§ 1983, 1985 claims [Dkt. 67 at 3]. The Lawyer Defendants advance that "[i]n the 53 pages of the instant complaint, Plaintiff does not try to explain how the very same core of operative facts arising out of the child custody action in Texas state court supports subject matter jurisdiction here when the Magistrate Judge decided it did not exist in the [First Lawsuit]" [Dkt. 67 at 3, n.2].

As set out by the Court in the First Lawsuit, the *Rooker–Feldman* doctrine bars the Court's consideration of "direct attacks on a state court judgment, as well as all claims that are 'inextricably intertwined' with the state court proceedings." *See Marshall v. Carter*, 2021 WL 2980716, at *8 (citing *AEP Energy Services Gas Holding Co. v. Bank of Am., N.A.*, No. CIV.H-03-4973, 2004 WL 2278770, at *11 (S.D. Tex. Sept. 14, 2004) (quoting *In re Erlewine*, 349 F.3d 205, 209 (5th Cir. 2003)), *report and recommendation adopted*, No. H-03-4973, 2005 WL 8164018 (S.D. Tex.

Apr. 6, 2005)). *Rooker–Feldman* has four elements: "(1) a state-court loser; (2) alleging harm caused by a state-court judgment; (3) that was rendered before the district court proceedings began; and (4) the federal suit requests review and reversal of the state-court judgment." *Burciaga v. Deutsche Bank Nat'l Tr. Co.*, 871 F.3d 380, 384 (5th Cir. 2017) (citation omitted). The doctrine applies to both final judgments and "claims that are 'inextricably intertwined' with a state court decision." *Id.*; *see also Weaver v. Tex. Capital Bank N.A.*, 660 F.3d 900, 904 (5th Cir. 2011); *Croswait v. Wilmington Sav. Fund Soc'y FSB*, No. 4:19-CV-305, 2020 WL 1242449, at *4 (E.D. Tex. Mar. 16, 2020).[7] "One hallmark of the *Rooker–Feldman* inquiry is what the federal court is being asked to review and reject." *Truong v. Bank of Am., N.A.*, 717 F.3d 377, 382 (5th Cir. 2013) (citing *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)). "The second hallmark of the *Rooker–Feldman* inquiry is the source of the federal plaintiff's alleged injury." *Id.* In the First Lawsuit, the Court continued,

> "Courts in this circuit have 'consistently applied the *Rooker-Feldman* doctrine as a bar to federal jurisdiction over matters related to the family disputes of divorce and child support.'" *Aikins v. Pitre*, No. 3:18-CV-2341-B-BN, 2018 WL 5634214, at *3 (N.D. Tex. Sept. 21, 2018) (collecting cases), *report and recommendation adopted*, No. 3:18-CV-2341-B, 2018 WL 5621490 (N.D. Tex. Oct. 30, 2018); *see Vanderbol v. Tuller*, No. 4:18-CV-882-ALM-CAN, 2019 WL 5691818, at *10 (E.D. Tex. Aug. 26, 2019) (collecting cases), *report and recommendation adopted*, No. 4:18-CV-882, 2019 WL 4686362 (E.D. Tex. Sept. 26, 2019); *Bertling v. Westrup*, No. SA-18-CA-563-XR-HJB, 2018 WL 6381001, at *3 (W.D. Tex. Aug. 13, 2018) ("'[f]ederal courts have consistently applied the *Rooker–Feldman* doctrine as a bar to federal jurisdiction over matters related to the family disputes' including divorce, child support, and child custody.") (collecting cases), *report and recommendation adopted*, No. SA-18-CV-563-XR, 2018 WL 5016127 (W.D. Tex. Oct. 16, 2018). "The federalism interests underlying the *Rooker–Feldman* doctrine particularly apply to domestic issues like child custody and child support." *Johnson v. MDHS*, No. 1:19-CV-829-HSO-JCG, 2020 WL 5415491, at *1 (S.D. Miss. Apr.

---

[7] "In other words, when claims asserted at the state and federal levels are so interwoven that the federal court is 'in essence being called upon to review the state-court decision,' the *Rooker–Feldman* doctrine divests the federal court of subject matter jurisdiction to conduct such a review." *See AEP Energy Services*, 2004 WL 2278770, at *11 (quoting *Davis v. Bayless,* 70 F.3d 367, 375-76 (5th Cir. 1995); *United States v. Shepard,* 23 F.3d 923, 924 (5th Cir. 1994)).

>14, 2020), *report and recommendation adopted*, No. 1:19CV829-HSO-JCG, 2020 WL 2572535 (S.D. Miss. May 21, 2020).[8]

*Marshall v. Carter*, 2021 WL 2980716, at *8.

Each of the requisite four elements of *Rooker–Feldman* are once again met. Plaintiff makes clear that the source of his injuries are Texas state court orders, namely child custody and child support orders, from which he seeks redress. Each of Plaintiff's causes of action include reference to such orders. Thus, as in the First Lawsuit, "it is apparent on the face of Plaintiff's pleadings that his claims are driven by his dissatisfaction with the Texas state court orders and that he is doing nothing more than seeking further review of the decisions of the state court on custody issues in a federal forum." *See id*. at *9.

Because Plaintiff seeks a change in the outcome of those issues already decided by the Texas state court, the Court cannot entertain such relief under *Rooker–Feldman*; again, "the true thrust of Plaintiff's allegations is against the merits in his child custody proceedings/disputes." *See Vanderbol*, 2019 WL 5691818, at *13. The Court lacks subject matter jurisdiction. *See*, *e.g.*, *Minor*, 2020 WL 2198164, at *3 ("to the extent that this is an attempt to obtain judicial review of a state custody decision, this case would be barred by the *Rooker-Feldman* doctrine"); *Evans v. Williamson Cnty. Gov't*, No. A-15-CV-436-SS, 2015 WL 4621449, at *4 (W.D. Tex. May 28, 2015) (concluding the court lacked subject matter jurisdiction under *Rooker–Feldman* because the plaintiff's claims were "actually a collateral attack on the validity of the orders in state child

---

[8] Two examples illustrate this point. In *McCormick v. Dempster*, the Fifth Circuit affirmed the district court's dismissal of a 42 U.S.C. § 1983 action for lack of subject matter jurisdiction under *Rooker–Feldman* because the *pro se* plaintiff "asserted that her due process rights were violated by a state court's entry of a child custody order and another state court's enforcement of that order." 82 F. App'x 871, 871 (5th Cir. 2003) (per curiam). The Fifth Circuit further concluded the plaintiff's "federal allegations can be construed as requests for review of the state court orders or as issues that are 'inextricably intertwined' with those orders." *Id.* More recently, in *Meaux v. U.S. Gov't*, the Fifth Circuit affirmed the district court's dismissal of a *pro se* plaintiff's lawsuit under the *Rooker–Feldman* doctrine because the plaintiff asserted a collateral attack on a child custody judgment. 648 F. App'x 409, 410 (5th Cir. 2016) (per curiam).

custody proceedings, as well as the validity of those proceedings themselves"), *report and recommendation adopted*, No. A-15-CA-436-SS, 2015 WL 4624708 (W.D. Tex. July 31, 2015); *Manning v. Franklin*, No. H-14-2916, 2015 WL 4039388, at *4 (S.D. Tex. June 16, 2015) (finding the § 1983 and conspiracy claims were "inextricably intertwined" with the plaintiff's child custody and child support battles state court, including that those proceedings "deprived her of notice"), *report and recommendation adopted as modified*, No. H-14-2916, 2015 WL 4385989 (S.D. Tex. July 2, 2015); *Brown v. Joseph*, No. A-13-CA-843-LY, 2014 WL 2168366, at *3 (W.D. Tex. May 23, 2014) (observing that the plaintiff appeared "to be collaterally attacking the propriety of the state courts' decisions with regard to his parental rights and custody of his children" and thus recommending dismissal under *Rooker–Feldman*), *report and recommendation adopted*, No. 1:13-CV-843-LY (W.D. Tex. Sept. 18, 2014), ECF No. 19.[9]

### *Rooker–Feldman and the Indian Child Welfare Act*

In Plaintiff's First Lawsuit, Plaintiff urged that the *Rooker-Feldman* doctrine could not bar this Court's review because Congress has expressly provided for federal review of child custody proceedings involving Indian children. *Marshall v. Carter*, 2021 WL 2980716, at *4 (citing ECF No. 7). Here too, Plaintiff's live pleading points to ICWA, arguing that it provides him fundamental rights as an Indian parent and requires "court process" by way of notice for all proceedings to his tribe, the Secretary of the Interior of the United States, and to himself [Dkt. 13

---

[9] *Rooker–Feldman* divests the Court of jurisdiction over the entirety of Plaintiff's claims, including his requests for injunctive and declaratory relief. *See Paup, v. Texas*, 6:16-CV-417-RWS-KNM, 2017 WL 9289648, at *8 (E.D. Tex. Jan. 31, 2017) (citing *Weaver v. Tex. Capital Bank N.A.*, 660 F.3d 900, 904 (5th Cir. 2011)) ("There is no way for this Court to review Paup's requested relief of entering a new child custody order without reviewing the merits of Judge Tarrance's decision to award custody of the Paup children to Green."), *report and recommendation adopted*, 6:16-CV-417-RWS-KNM, 2017 WL 1129906 (E.D. Tex. Mar. 27, 2017) 2017 WL 9289648; *Smith v. Woods*, No. CV 19-14779, 2020 WL 3606271, at *11 (E.D. La. July 2, 2020), *aff'd*, 853 F. App'x 980 (5th Cir. 2021) (footnote omitted) (collecting cases) ("The fact that Plaintiff seeks damages in addition to injunctive relief does not negate the fact that Plaintiff's claims ultimately constitute a collateral attack on the state court decree and that Plaintiff ultimately seeks to overturn or void a state court judgment, relief that this Court lacks subject matter jurisdiction to grant.").

at 27-28]. The Court found that ICWA did not apply to Plaintiff's claims in the First Lawsuit because ICWA only permits court review of actions for foster care placement or termination of parental rights for an Indian child. *Marshall v. Carter*, 2021 WL 2980716, at *4-5.[10] More specifically, the Court explained Plaintiff did not show his parental rights were terminated, as his "'termination' claim is premised on an inability to spend time with his minor child, [and] such limitations or restraints on visitation or access simply do not fall within the definition of termination of parental rights under ICWA." *Id.* at *5. ICWA does not vest the Court with jurisdiction to hear the Plaintiff's claims in the instant suit for the same reason – Plaintiff's parental rights were not terminated, which is the limited circumstance for which § 1914 of ICWA provides a private cause of action to challenge a state court child custody determination. *See id.* To the extent Plaintiff pleads new allegations here not present in the First Lawsuit, he still does not show that his parental rights over his minor child were terminated by the state court child custody proceeding. Plaintiff's live pleading argues "the acts of the collective defendants in 2016" purposefully sought to "deprive Marshall of his right be exercise his parental rights" and "caused irreparable harm" to "father and son" [Dkt. 13 at 47]. Like in Plaintiff's First Lawsuit, the uncontested record in this case reveals no state court action terminating his parental rights.[11]

---

[10] ICWA states in relevant part:
> Any Indian child who is the subject of any *action for foster care placement* or *termination of parental rights under State law*, any parent or Indian custodian from whose custody such child was removed, and the Indian child's tribe may petition any court of competent jurisdiction to invalidate such action upon a showing that such action violated any provision of sections 1911, 1912, and 1913 of this title.

25 U.S.C. § 1914 (emphasis added). Pointing to § 1912, Plaintiff alleges that the child custody and child support proceedings failed to comply with ICWA's notice requirements [Dkt. 13 at 27-36]. Section§ 1912 states, in relevant part: "the party seeking *the foster care placement of, or termination of parental rights to, an Indian child* shall notify the parent or Indian custodian and the Indian child's tribe, by registered mail with return receipt requested, of the pending proceedings and of their right of intervention. 25 U.S.C. § 1912(a)

[11] Plaintiff retained certain visitation rights under the Agreed Order, Modified Agreed Order, and Temporary Order. Nor did the Transfer Order – or Plaintiff's and Carter's failure to effectuate transfer of the case – terminate the parent-child relationship.

In sum, the instant suit presents no new allegations that suggest ICWA provides the Court with jurisdiction to hear Plaintiff's challenge.[12] The Court concludes *Rooker–Feldman* bars Plaintiff's claims; this Court has no jurisdiction over his collateral attack on the state court child custody and child support orders.[13][14]

---

[12] Plaintiff points to Washington state law, RCW 37.12.010, and federal Public Law 280 [Dkt. 13 at 25-26], each of which are immaterial to the Court's subject matter jurisdiction. Neither Washington state law nor PL 280 vest this Court with jurisdiction to hear challenges to Texas state court orders; *Rooker–Feldman* bars the instant lawsuit.

[13] Allowing Plaintiff to amend his allegations against the Lawyer Defendants would be futile. It is not clear how Plaintiff could amend to avoid his claims being barred by *Rooker–Feldman*. *See Manning v. Franklin*, CIV.A. H-14-2916, 2015 WL 4039388, at *7 (S.D. Tex. June 16, 2015), *report and recommendation adopted as modified*, CIV.A. H-14-2916, 2015 WL 4385989 (S.D. Tex. July 2, 2015) ("amendment of Plaintiff's complaint would be futile. The gravamen of Plaintiff's complaint is the loss of custody of her son, which has caused her to file claims against various attorneys, judges, former judges, schools, school employees, and her ex-husband. The *Rooker–Feldman* doctrine precludes this court from considering Plaintiff's 1983 claims and related state claims.").

[14] The Lawyer Defendants once again do not identify the precise doctrine upon which they posit the Court lacks jurisdiction. *Compare* [Dkt. 67 at 6], *with Marshall v. Carter*, 2021 WL 2980716, at *7 n.16. The Lawyer Defendants utilize language in their Motion to Dismiss that could be intended to implicate the Domestic Relations Exception; specifically they advance, that "[i]t is apparent from the amended complaint that the claims arise out of the very same family law dispute between Plaintiff and the mother of his son that was litigated in State court" [Dkt. 67 at 6]. As the Court explained in the First Lawsuit:

> Defendants do not identify the precise doctrine upon which they posit the Court lacks jurisdiction, choosing to only reference the Court's inability to hear disputes arising out of family law matters and a note to "insert case law." The allegations in Plaintiff's live pleading could give rise to arguments under both *Rooker–Feldman* and the domestic relations exception. Indeed, in addition to asserting a federal question, Plaintiff alleges there is diversity jurisdiction [Dkt. 1-1]. The domestic relations exception is a "narrow" exception to diversity jurisdiction. *Vulcan Materials Co. v. City of Tehuacana*, 238 F.3d 382, 386 n.2 (5th Cir. 2001); *see also Watson v. Watson*, No. 3:21-CV-26-KHJ-MTP, 2021 WL 1254354, at *2 (S.D. Miss. Apr. 5, 2021). Specifically, the "exception encompasses only cases involving the issuance of a divorce, alimony, or child custody decree[.]" *Ankenbrandt v. Richards*, 504 U.S. 689, 704 (1992); *see also Marshall v. Marshall*, 547 U.S. 293, 299 (2006) (characterizing *Ankenbrandt* as a case that "reined in" the exception). This Court has broadly construed the domestic relations exception. *See, e.g.*, *Vanderbol v. Tuller*, No. 4:18-CV-882-ALM-CAN, 2019 WL 5691818, at *13 n.30 (E.D. Tex. Aug. 26, 2019) ("[T]he domestic relations exception bars federal courts from issuing or modifying a decree for divorce, alimony, or child custody." (emphasis added)), *report and recommendation adopted*, No. 4:18-CV-882, 2019 WL 4686362 (E.D. Tex. Sept. 26, 2019); *Bowling v. Dahlheimer*, No. 4:18-CV-610-ALM-CAN, 2019 WL 5395598, at *8 (E.D. Tex. Aug. 7, 2019) (same), *report and recommendation adopted*, No. 4:18-CV-610, 2019 WL 4727420 (E.D. Tex. Sept. 27, 2019); *Bishop v. Ware*, No. 4:17-CV-886, 2019 WL 1275336, at *4 (E.D. Tex. Mar. 20, 2019) (same). The Court recognizes that other courts, however, have construed the exception more narrowly. *See, e.g.*, *United States v. Nolley*, No. H-20-3908, 2021 WL 1060226, at *2 (S.D. Tex. Mar. 19, 2021) (finding the domestic relations exception does not apply because no party seeks the issuance of a divorce, alimony, or child custody decree). Even under a narrow reading of the domestic relations exception, to the extent not barred by *Rooker–Feldman*, Plaintiff's claims would not proceed in light of the domestic relations exception as Plaintiff's requested relief effectively asks for a child custody decree.

*Marshall v. Carter*, 2021 WL 2980716, at *7 n.16.

*Federal Rule of Civil Procedure 12(b)(6)*

A Rule 12(b)(6) motion to dismiss argues that, irrespective of jurisdiction, the complaint fails to assert facts that give rise to legal liability of the defendant. FED. R. CIV. P. 12(b)(6). The claims stated must include enough factual allegations "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).[15] "[C]ourts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Twombly*, 550 U.S. at 555. Further, in determining whether to grant a motion to dismiss under Rule 12(b)(6), a court generally may not "go outside the complaint." *Scanlan v. Tex. A&M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003). A court may, however, consider "the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (citation omitted).

*Rule 12(b)(6) Grounds for Dismissal*[16]

*Attorney Immunity*

In Texas, "attorney immunity"—an attorney's defense to claims by non-clients in association with the attorney's actions in representing a client in litigation—is properly characterized as a true immunity from suit, not as a defense to liability. *Balistreri-Amrhein v.*

---

[15] To assess the sufficiency of a complaint, the Court first identifies conclusory allegations and disregards them, for they are "not entitled to the assumption of truth," and then considers whether the remaining allegations "plausibly suggest an entitlement to relief." *Iqbal*, 556 U.S. at 681. "A claim has facial plausibility when the plaintiff pleads factual content that allows the [C]ourt to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009) (citing *Iqbal*, 556 U.S. at 678).

[16] Again, the Court recommends that the Lawyer Defendants' Motion to Dismiss be granted on Rule 12(b)(1) grounds as barred by *Rooker–Feldman*, but out of an abundance of caution, the Court will address attorney immunity under 12(b)(6) because it too acts as a complete bar to Plaintiff's claims.

*Verrilli*, No. 4:16-CV-00112-ALM-CAN, 2016 WL 11191119, at *9 (E.D. Tex. Oct. 7, 2016), *report and recommendation adopted*, No. 4:16-CV-112, 2017 WL 726919 (E.D. Tex. Feb. 24, 2017); *Troice v. Proskauer Rose*, *L.L.P.*, 816 F.3d 341, 346 (5th Cir. 2016); *Sorey v. Kellett*, 849 F.2d 960, 962 (5th Cir. 1988); *see also Cantey Hanger, LLP v. Byrd*, 467 S.W.3d 477, 481-84 (Tex. 2015). Attorney immunity is necessary "to avoid the inevitable conflict that would arise if [an attorney] were 'forced constantly to balance his own potential exposure against his client's best interest.'" *Troice*, 816 F.3d at 346 (quoting *Alpert v. Crain, Caton & James, PC*, 178 S.W.3d 398, 405 (Tex. App.—Houston [1st Dist.] 2005, pet. denied)).

The Lawyer Defendants argue they are entitled to absolute attorney immunity because all of the acts alleged by Plaintiff are "performed legal services necessarily in furtherance of the opposing party's legal rights in the custody matter" [Dkt. 67 at 7]. They urge the instant suit is nothing more than a "claim by a disgruntled father, plaintiff, against the lawyers who represented the opposing party, the mother of the child in the custody matter in State court" [Dkt. 67 at 6]. The instant Motion goes through Plaintiff's claims against each of the individual Lawyer Defendants, identifying each claim in the live complaint as to Defendant Skibell [Dkt. 67 at 7-8], Defendant Bohach [Dkt. 67 at 8-9], and Defendant Bauerle [Dkt. 67 at 9], revealing that the complained of acts are those typical of an attorney in representation of their client. Again, Plaintiff did not respond to the instant Motion and has not otherwise identified any basis to find that the attorney immunity of the Lawyer Defendants should not be absolute. Dismissal on this basis would also be appropriate.

## UNSERVED DEFENDANT KRISTIN BRADY

Defendant Kristin Brady has not been served in this matter. Plaintiff filed returns of service as to Defendants Skibell, Bohach, Bauerle, Skibell, Bohach & Archer, P.C., (the Lawyer

Defendants"), but no return of service was filed for Kristin Brady. Summons was returned unexecuted as to Defendant Kristin Brady [Dkts. 95; 96]. Plaintiff has not requested leave to serve Brady. It is undisputed that "[b]efore a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied." *Omni Cap. Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987); *see Williams v. Lambright*, No. 4:19-CV-00342-ALM-CAN, 2020 WL 949205, at *1 (E.D. Tex. Jan. 22, 2020) (collecting cases) ("A federal court is without personal jurisdiction over a defendant unless the defendant is served under Rule 4. . . . Thus, it is respectfully recommended that Plaintiff's claims against the unserved defendants be dismissed."), *report and recommendation adopted*, No. 4:19-CV-342, 2020 WL 924213 (E.D. Tex. Feb. 26, 2020). Because Brady has not been served, Plaintiff's claims against her are subject to dismissal under Federal Rule of Civil Procedure 4(m) for this reason. However, even had Brady been properly served, Plaintiff's claims would be subject to dismissal on the same grounds raised by the Lawyer Defendants for lack of subject matter jurisdiction under the *Rooker–Feldman* doctrine, or in the alternative, due to attorney immunity.

## CONCLUSION AND RECOMMENDATION

For the foregoing reasons, the Court recommends that the Lawyer Defendants' Motion to Dismiss [Dkt. 67] be **GRANTED** on the Rule 12(b) grounds, that the Motion's Rule 12(e) grounds for a more definite statement be **DENIED**, and further recommends Plaintiff's claims against Defendants Arthur Skibell, Kari Bohach, Ryan Bauerle, and Bohach Law Group, P.C., as well as Defendant Kristin Brady, be **DISMISSED**, as set forth herein.

Within fourteen (14) days after service of the magistrate judge's report, any party must serve and file specific written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(C). In order to be specific, an objection must identify the specific

finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.

Failure to file specific, written objections will bar the party from appealing the unobjected-to factual findings and legal conclusions of the magistrate judge that are accepted by the district court, except upon grounds of plain error, provided that the party has been served with notice that such consequences will result from a failure to object. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

**SIGNED this 14th day of February, 2022.**

_____
Christine A. Nowak
UNITED STATES MAGISTRATE JUDGE